IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| YEETTA L. WARD <br> 3413 Princess Grace Court <br> District Heights, Maryland 20747 <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA <br> (A Municipal Corporation) <br> 441 Fourth Street, N.W. <br> Washington, DC 20001 <br><br> <u>Serve</u>: Mayor Vincent C. Gray <br> c/o Designated Representative <br> Executive Office of the Mayor <br> 1350 Pennsylvania Avenue, N.W., Suite 316 <br> Washington, DC 20004 <br><br> <u>Serve</u>: Attorney General Irvin Nathan <br> c/o Designated Representative <br> Office of the Attorney General for D.C. <br> 441 Fourth Street, N.W. <br> Washington, DC 20001 <br><br> Defendant. | Case No.: _____ <br><br> JURY DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff Yeetta L. Ward, by and through her undersigned counsel, and sues Defendant District of Columbia for the cause of action stated as follows:

## INTRODUCTION

1. Plaintiff Yeetta L. Ward ("Plaintiff" or "Ms. Ward") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42

U.S.C. § 2000e, *et seq.*; Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for relief from discrimination based on disabilities (major depressive disorder, posttraumatic stress disorder, anxiety disorder and panic disorder), failure to accommodate, retaliation (prior protected activity), and hostile work environment.

2. Defendant District of Columbia ("Defendant") discriminated against Plaintiff on the basis of her disabilities (major depressive disorder, posttraumatic stress disorder, anxiety disorder and panic disorder), participation in prior protected activity, and failed to accommodate her disability and further subjected her to a hostile work environment during the course of her employment with the District of Columbia Department of Youth Rehabilitation Services ("DYRS").

**PARTIES**

3. Ms. Ward is currently domiciled at 3413 Princess Grace Court District Heights, Maryland 20747. At all relevant times, Plaintiff is an employee of the DYRS. Plaintiff is a United States citizen.

4. Defendant District of Columbia is a governmental organization and municipal corporation. DYRS is a subordinate agency of the District of Columbia government. Defendant is headquartered at 441 Fourth Street, N.W., Washington, DC 20001.

## JURISDICTION

5.   This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*; Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  It further has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it asserts claims that arise under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*

6.   This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

7.   Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia.  28 U.S.C. § 1391.  Venue is further proper in this district because there is no other district in which this action may otherwise be brought.  *Id.*

8.   Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the DYRS, which is operates and is headquartered in the District of Columbia.

## EXHAUSTION OF REMEDIES

9. Plaintiff has exhausted all of her administrative remedies.

10. Plaintiff timely files this action in accordance with the Notice of Rights, dated July 24, 2013, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice. Plaintiff brings this action for discrimination on the basis of disabilities (major depressive disorder, posttraumatic stress disorder, anxiety disorder and panic disorder), retaliation (prior protected activity), failure to accommodate and hostile work environment (disabilities and retaliation).

## FACTS

11. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

12. Ms. Ward was hired by DYRS on or around August 24, 2004.

13. Ms. Ward has been employed with DYRA as a Correctional Officer, Youth Development Representative and, most recently, Transportation Dispatcher.

14. Supervisor Youth Development Representative Ernst Waiters (no known EEO activity, no known disability) was Ms. Ward's immediate supervisor.

15. Ms. Ward has been diagnosed as suffering from major depressive disorder, posttraumatic stress disorder, anxiety disorder and panic disorder ("medical conditions"), which are controlled with medication and psychotherapy.

16. Because of the constant discriminatory and retaliatory conduct that Defendant subjected Ms. Ward, her medical conditions were significantly exacerbated, which included an emotional breakdown on or around April 30, 2012.

17. On or around April 30, 2012, Ms. Ward's therapist informed the Defendant that Ms. Ward's condition warranted her receiving leave due to stress.

18. Ms. Ward subsequently informed the Defendant that she would use her earned sick leave.

19. At all relevant times, Ms. Ward was able to perform the required functions and duties of her position with or without a reasonable accommodation.

20. Ms. Ward and her therapist requested the following reasonable accommodations: (1) that Ms. Ward be assigned to a position that is not under the supervision of Mr. Jeffrey McInnis or Ms. Sharon White-Pulley, who are the individuals named in Ms. Ward's previous harassment claim; (2) that Ms. Ward be allowed leave to attend necessary medical appointments; (3) that Ms. Ward temporarily not work more than 8 hours a day; and (4) that Ms. Ward temporarily not work weekends.

21. With these reasonable accommodations, Ms. Ward's therapist released her to return to work on July 24, 2012.

22. In August 2012, DYRS employees, including T.T. (no known protected activity), N.R. (no known protected activity), N.R-K. (no known protected activity), T.R. (no known protected activity), J.R. (no known protected activity), G.S (no known protected activity) and D.J. (no known protected activity), received a workplace accommodation and were permitted to work at certain locations and/or were exempted from the Overtime Draft policy (*e.g.*, drafted to work overtime after their regular eight-hour shift).

23. None of these requests would have created an undue hardship for the Defendant.

24. Due to the exacerbation of her medical conditions, Ms. Ward, her physician and her therapist requested reasonable accommodations in writing and verbally addressing Director Neil Stanley, Christopher Shorter (Chief of Staff), Cathy Ohler (Human Resources Representative), Satina Smith (Management Liaison Specialist), Quiyana Hall (Lead Management Liaison Specialist) and Kathy Ashe (Special Assistant/Labor Liaison) on or around May 2012, June 2012 and August 2012.

25. On August 30, 2012, Santina Smith denied Ms. Ward's requests for reasonable accommodation and stated that her request to work weekdays was unreasonable. She also informed Ms. Ward that she would be marked Absent Without Leave ("AWOL") if she did not return to work on September 2, 2012.

26. The same day, Ms. Ward informed the Defendant that she would not be able to return to work on September 2, 2012 due to her doctor's orders, and she also requested leave pursuant to the Family and Medical Leave Act so that she would not be marked AWOL.

27. On or around August 30, 2012, Ms. Santina Smith informed Ms. Ward via email that "[the Defendant had] sufficient medical documentation" and that she was eligible to take medical leave pursuant federal and the District of Columbia's Family and Medical Leave Act.

28. The next day, on or around August 31, 2012, Ms. Ward was informed via email that the Defendant was going to backdate all of her used paid sick leave that qualified as FMLA leave as FMLA leave.

29. Defendant did not express to Ms. Ward or to her therapist or her doctor that it needed further medical documentation beyond the documentation Ms. Ward provided to it.

30. Although Defendant was willing to transfer Ms. Ward to work a midnight shift (*i.e.*, 10:45 p.m. – 6:45 a.m.) from her 6:30 a.m. to 3:00 p.m. shift, this was not a reasonable accommodation because Ms. Ward's doctor advised that this schedule would disrupt Ms. Ward's sleep schedule and strict therapy schedule, which were necessary for her recovery.

31. Ms. Ward appeared for the midnight shift under the threat of discipline and/or termination, and against her doctor's orders, only to be told by the shift supervisor that she had no information pertaining to Ms. Ward being transferred to the midnight shift and sent Ms. Ward home.

32. When Ms. Ward's FMLA leave ran out, the Defendant required her to return to work but placed her on administrative leave pending the results of a Fitness for Duty exam.

33. Other DYRS employees were not required to submit or pass a Fitness for Duty exam.

34. Ms. Ward passed the Fitness for Duty exam and returned to work on or around October 18, 2012.

35. In October 2013, Ms. Ward was transferred to position of Transportation Dispatcher, which permits her to work weekdays and eight-hour shifts.

36. Defendant had the ability to transfer Ms. Ward to this shift accommodate her request for reasonable accommodation.

37. Another location was available in the At-Risk Unit, which would have accommodated Ms. Ward's doctor's request.

38. Ms. Ward had previously and successfully worked in the At-Risk Unit in the past.

39. Even with her medical conditions, Ms. Ward has and can perform the essential duties and responsibilities of her position with or without a reasonable accommodation.

40. Since she began her employment with DYRS, Ms. Ward has received positive performance evaluations.

41. When she was unable to obtain relief directly from the Department, Ms. Ward sought relief by cross-filing a Charge with the District of Columbia Office of Human Rights ("DCOHR") and the United States Equal Employment Opportunity Commission ("EEOC"), which she did in August 22, 2012 and amended in January 2013. *See* EEOC Charge No. 570-2012-02227.

42. Ms. Ward now timely files this Complaint for relief from the discriminatory and retaliatory treatment that she has and is experiencing.

## CAUSES OF ACTION

### COUNT ONE
**(Disability Discrimination/Failure to Accommodate)**

43. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

44. Plaintiff has suffers from major depressive disorder, posttraumatic stress disorder, anxiety disorder and panic disorder and is entitled to reasonable accommodation under the ADA, the Rehabilitation Act and the DCHRA.

45. The medical documentation provided by Plaintiff to Defendant established that her medical condition is disabling and affected, among other things, her ability to sleep, concentrating, thinking, and eating was significantly impacted.

46. Plaintiff made repeated requests to Defendant for a reasonable accommodation prior to and after her EEO, EEOC and USDC complaint filings.

47. Plaintiff repeatedly informed her supervisors of her disability and that she needed: (1) to be assigned to a position that is not under the supervision of Mr. Jeffery McInnis or Ms. Sharon White-Pulley, who are the individuals named in Ms. Ward's previous harassment claim; (2) to be allowed leave to attend necessary medical appointments; (3) to temporarily not work more than 8 hours a day; and (4) to temporarily not work weekends.

48. Upon information and belief, Defendant provided an accommodation to similarly situated employees (no known EEO activity).

49. Defendant was unwilling to assist Plaintiff in receiving her reasonable accommodation.

50. The reasonable accommodation requested by Plaintiff would not have caused an undue burden or hardship on Defendant.

51. Defendant's failure to provide Plaintiff the reasonable accommodation requested deprived Plaintiff of the opportunity to be as productive as her co-workers in the same work environment.

52. Plaintiff is a qualified individual with a disability under the ADA, the Rehabilitation Act, and the DCHRA.

53. Ms. Ward has always been able to perform the duties and responsibilities of her position with or without a reasonable accommodation.

54. Plaintiff's medical condition substantially limits major life activities; namely, her ability to sleep, concentrate, think and eat.

55. Plaintiff's condition is ongoing in nature.

56. Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of a Youth Development Representative.

57. The unlawful conduct and adverse actions alleged throughout this Complaint are materially adverse action.

58. Any reason proffered for Defendant's unlawful conduct would not be legitimate, and it would be pretext.

59. Prior to being subjected to the adverse action herein, Defendant was aware that Plaintiff's medical conditions.

60. Plaintiff has been treated differently and subjected to different terms and conditions of employment due to her disabilities.

61. Defendant intentionally discriminated against Plaintiff because of her disabilities in violation of the ADA, the Rehabilitation Act and the DCHRA.

62. Defendant has limited, segregated and classified Plaintiff in a way which deprives her of employment opportunities because of her disabilities.

63. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

64. Plaintiff believes that she was subjected to the adverse action herein based upon her disabilities.

65. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

66. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

67. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

68. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

69. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Award compensatory damages in excess of Two Hundred and Twenty-Five Thousand Dollars ($225,000.00), as well as pre- and post-judgment interest;

    b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of

       promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

  c. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

  d. Award reasonable attorney fees, costs, and expenses incurred for this action;

  e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

  f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  g. Supervisory training for the supervisors at issue herein;

  h. Award equitable, declaratory, and injunctive relief; and

  i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### (Retaliation)

70. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff has been involved in a federal complaint from 2010 to its disposition in 2013.

72. Plaintiff regularly complained via email to her supervisors regarding her belief that she was being subjected to discriminatory and retaliatory conduct.

73. On or around September 13, 2012, Plaintiff cross-filed a Charge with the Maryland Commission of Civil Rights and the EEOC alleging retaliation and subjection to a hostile work environment for different unlawful conduct not alleged in this Complaint. *See* EEOC Charge No. 570-2012-01809. This Charge is currently being investigated by the EEOC – Baltimore Field Office.

74. On or around June 10, 2013, Plaintiff cross-filed a Charge with the DCOHR and the EEOC alleging retaliation and subjection to a hostile work environment for different unlawful conduct not alleged in this Complaint. *See* EEOC Charge No. 570-2013-00661. This Charge is currently being investigated by the EEOC – Washington Field Office.

75. Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including ailing to honor her accommodation requests, unreasonably requiring her to submit further medical documentation, denying her requests for a reasonable accommodation, and requiring her to submit to a Fitness for Duty Exam in violation of Title VII, the ADA, the Rehabilitation Act and the DCHRA.

76. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII, the ADA, the Rehabilitation Act and the DCHRA.

77. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

78. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

79. Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar or any adverse treatment.

80. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

81. The adverse treatment that Plaintiff was being subjected to by Defendant was obvious to her co-workers who could and did observe the distress that the treatment caused Plaintiff.

82. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect upon other employees' willingness to engage in protected activity.

83. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

84. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

85. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

86. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

87. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income,

benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

88. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

89. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Two Hundred Twenty-Five Thousand Dollars ($225,000.00), as well as pre- and post-judgment interest;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
### (Hostile Work Environment)

90. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

91. As a result of Plaintiff's protected status and participation in protected activity, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII, the ADA, the Rehabilitation Act and the DCHRA.

92. Plaintiff was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, which created a hostile and abusive work environment.

93. Plaintiff believes that she was subjected to a hostile work environment based on her disabilities (mental) and because of her engagement in protected activity.

94. Defendant's unlawful conduct was unwelcome.

95. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint, including not being paid, created a hostile and abusive work environment.

96. Plaintiff was subjected to harassment because her disabilities (mental) and because of her engagement in protected activity, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

97. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or

remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

98. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

99. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

100. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

101. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

102. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Award compensatory damages in excess of Two Hundred Twenty-Five Thousand Dollars ($225,000.00), as well as pre- and post-judgment interest;;

    b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of

promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FOUR
### Equitable Relief

150. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

151. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendant to institute a policy and procedure to be implemented against discrimination;

b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c. Supervisory training for the supervisors at issue herein; and

d. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

152. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By: _____
DONNA WILLIAMS RUCKER
(D.C. Bar No. 446713)
RUCKER, BROWN & HENRY, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com

October 22, 2013                             Counsel for Plaintiff